**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

───────────────────────────────────────────────

JANSON JOHNSON,

        Petitioner,

v.                                                       Case No. 10-CV-341

UNITED STATES OF AMERICA,

        Respondent.

───────────────────────────────────────────────

## ORDER

On July 1, 2008, the court entered judgment sentencing Janson Johnson ("Johnson") to a term of one hundred and forty-four months in prison after he pled guilty to one count of Discharging a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), and 18 U.S.C. § 2. Johnson did not appeal his sentence, but instead, on April 13, 2010,[1] filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Pursuant to Rule 4 of the Rules Governing Section 2255 proceedings, the court must screen Johnson's motion to determine if he states a claim upon which § 2255 relief may be granted.

If it plainly appears from the face of the motion, and any annexed exhibits and the prior proceedings in the case, that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney

---

[1] Johnson's motion was received and stamped by the clerk on April 19, 2010; however, it appears that it was turned over to prison officials for mailing on April 13, 2010, thus making that the date it was "filed" under the "prison mail box rule."

to file an answer or other pleading. *See* Rule 4, Rules Governing Section 2255 Proceedings.

Section 2255 expressly imposes a one-year limitation period for the filing of a motion to vacate or modify. The limitation period starts to run from the date on which the judgment of conviction becomes final. Here, because Johnson did not appeal his conviction, it became final when the deadline to appeal – which, per Fed. R. App. P. 4(b)(1)(A), was ten days after judgment was entered – expired. The ten-day deadline for Johnson to appeal his sentence – calculated pursuant to Fed. R. App. P. 26(a)(1),[2] which stated that Saturdays, Sundays, and legal holidays should not be included in the computation – expired on July 16, 2008. The Seventh Circuit employs the "anniversary method" for calculating filing deadlines, *see United States v. Marcello*, 212 F.3d 1005, 1009 (7th Cir. 2000); therefore, Johnson had until July 16, 2009, to file his petition.

Johnson's motion, filed April 13, 2010, certainly appears on its face to be untimely. However, in response to the section of the 2255 form entitled "Timeliness of Motion," Johnson wrote:

> "AFFIDAVIT"
> On June 10, 2009, I Janson Johnson #09034-089, placed an original motion under 28 USC § 2255 into the USP Leavenworth's mail system, postage prepaid & affixed this same day 6/10/09 "Prison Mail Box Rule".

---

[2] Fed. R. App. P. 4(b)(1)(A) has since been amended to allow 14 days to appeal; however Fed. R. App. P. 26 has also since been amended to include all days (weekends and holidays) as "countable" days. The amended rules are not applicable to Johnson's motion however.

-2-

(2255 Motion, at 8). The "prison mail box rule,"[3] to which Johnson refers, specifies that when the petitioner is confined in an institution, the effective date of filing of a document is the date that the prisoner deposits the document in the institution's internal mail system, not the date that the document is received by the court clerk. *See Jones v. Bertrand*, 171 F.3d 499 (7th Cir. 1999) (specifying that the "prison mail box rule" is applicable to habeas motions).

Though Johnson attempts to invoke the "prison mail box rule," the rule's applicability is not readily apparent. This is because the court never actually received the June 10, 2009 motion referenced in Johnson's petition. Thus, the question before the court is whether the "prison mail box rule" is applicable to filings that were not actually received by the court. Different courts have reached different conclusions when confronted with this question.

The "prison mail box rule" was applied to habeas filings by the Supreme Court in *Houston v. Lack*, 487 U.S. 266 (1988). The Court held that a pro se prisoner "files" a document on the date that the prisoner delivers that document to prison authorities to be mailed to the court. *Id.* at 275. The Court explained that, in terms of filing, pro se prisoners are in a uniquely disadvantaged situation because they are forced to use the mail system, and to rely on prison officials, and cannot monitor the progress of their filings in real time. *Id.* Because pro se prison filers should not be punished for delays over which they have no control, the Court reasoned that a

---

[3] The "prison mail box rule" is also referred to as the *Houston* "mailbox rule." *See Houston v. Lack*, 487 U.S. 266 (1988).

bright line rule deeming documents filed when delivered to prison authorities would create greater certainty than relying on the date that the document was received and filed by the court. *Id.* The rationale was that the prison mail log would clearly show the date the document was delivered to prison authorities, whereas the date of receipt by the court may be delayed for all manner of reason such as the actions of prison officials or problems with the post office. *Id.*

In *Houston*, however, there was no debate as to whether the petitioner had actually mailed his filing, the only question was whether the date he "filed" it was the date he mailed it or the date it was received. The situation becomes more complex when, as in the instant case, the document is never received by the court.

In researching the issue, this court has found two different standards used at the appellate court level. In *Huizar v. Carey*, 273 F.3d 1220 (9th Cir. 2001), the Ninth Circuit Court of Appeals held that a prisoner who delivers a document for mailing that is never received by the court "gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time." *Id.* at 1223. In contrast, the Eleventh Circuit Court of Appeals held, in *Allen v. Culliver*, 471 F.3d 1196 (11th Cir. 2006), that if the district court makes a finding of fact that the prisoner timely mailed the document, then the prisoner is entitled to the "prison mail box rule," even if the document was never received, and regardless of the prisoner's diligence in following up. *Id.* at 1198. The Eleventh Circuit rejected the Ninth Circuit's "diligence"

-4-

requirement, because the Eleventh Circuit reasoned that if, according to *Houston*, a document is "filed" when delivered to prison authorities, then a lack of diligence on the part of the prisoner cannot operate to "un-file" the document. *Id.*

It is unclear which of the above two approaches, if either, the Seventh Circuit Court of Appeals would adopt.[4] The Eleventh Circuit's rule seems to be the most true to *Houston*, for if the document is actually filed when delivered to prison officials, then neither its failure to be received by the court, nor the prisoner's lack of diligence should operate to "un-file" the document, as there simply is no such mechanism for the un-filing of court documents. However, adopting this rule leads to absurd results. Under this rule, there could be hundreds of cases technically filed with the court at any given time, yet the court would have absolutely no knowledge of such cases. Further, the lack of a diligence requirement means that these cases could be pending for years, so long as at some point in time a prisoner was able to show that however many years earlier he had timely "filed" (i.e., delivered to prison officials) his document.[5] Thus, the Ninth Circuit's diligence requirement appears to be a necessary requirement in cases where the allegedly filed document was never received.

---

[4] This court, in its research on the matter, did not find any instance of the Seventh Circuit addressing this question.

[5] To further complicate matters, all a prisoner must do, under the Eleventh Circuit's rule, in order to shift the burden to the government, is to swear to the date that the document was allegedly delivered to prison officials. Thus, under the Eleventh Circuit's rule, a prisoner who has missed the filing date by eight years could swear that he in fact did timely deliver his papers to prison officials, though they were never received by the court, and thereby put the burden on the government to prove that the prisoner in fact did not do so. Such a rule is ill-advised and invites abuse.

-5-

However, the diligence requirement itself betrays the uselessness of the "prison mail box rule" in situations where the court never received the document. The whole point of the *Houston* Court's adoption of the "prison mail box rule" was to create a bright line rule whereby the date of filing could be easily determined by reference to the prison mail log. The diligence requirement – by introducing subjective standards such as whether the prisoner has "diligently followed up," and whether he has done so in a "reasonable amount of time" after failing to receive a disposition – completely eviscerates the bright line nature of the rule.

Further, it is also unclear just how useful resorting to the prison mail log would be in situations where the document is never received by the court. This is because often (if not always) the prison mail log will not convey the substance of the mailing. Therefore, even if a prisoner could show that he mailed something to the court within the applicable time period, the fact that the court would have no idea what that something was would make it absurd to say that whatever that something was has been "filed" with the court, and now the court must simply trust the prisoner to faithfully duplicate that exact previous document.

For the above reasons, neither the Eleventh Circuit's rule nor the Ninth Circuit's rule make much sense. Ultimately, what makes the most sense is to simply treat the issue as one in which the prisoner is potentially entitled to equitable tolling. Though equitable tolling is subjective, and thus not a bright line rule, the simple fact is that it is not possible to have a bright line rule that applies to the instant situation,

as demonstrated by the shortcomings of the Eleventh Circuit's rule, and the subjectiveness of the Ninth Circuit's rule. There is already considerable case law regarding equitable tolling, thus it is preferential to proceed under that well-developed rubric, than to – as the Ninth Circuit has done – invent an entirely new "diligence" standard to apply in such situations.

Equitable tolling is a judge-made doctrine that excuses untimely filing when such untimeliness results from "[e]xtraordinary circumstances far beyond the litigant's control." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). "[T]he threshold necessary to trigger equitable tolling is very high." *Id.*

As a general rule, the "they lost my mail argument" typically will not succeed, *Washington v. Ollison*, 2007 WL 1378013, *3, n.3 (N.D. Cal. 2007), for filing deadlines would become meaningless if a mere affidavit stating that a motion was timely filed, but was evidently lost in the mail, was all that was needed to excuse an untimely filing. Courts are typically only willing to equitably toll the filing deadline when there is sufficient evidence that in fact the petitioner did timely mail his filing, thus making the claim of "lost mail" substantially more believable. *See Id.* (tolling deadline as a result of "lost mail" where petitioner presented several forms of evidence substantiating his claim that he had in fact mailed his petition on time); *Chapman v. Ricks*, 2008 WL 820189, *7-*8 (N.D. N.Y. 2008) (same).

In the instant case, Johnson has not presented any corroborating evidence beyond his own affidavit demonstrating that he did timely mail a motion in June

-7-

2009. Such a lack of evidence would typically not warrant outright denial of equitable tolling, but rather would result in the court issuing a show cause order allowing the movant the opportunity to produce some evidence that he did in fact mail a motion to the court on the date claimed. However, in the instant case, denial of equitable tolling is the correct action to take. This is because, even if Johnson did timely mail a motion and said motion was lost in the mail, such circumstances would only justify tolling the deadline as long as necessary for Johnson to reasonably discover that his submissions were not received by the court, and to re-submit them. While certainly lost mail is beyond the litigant's control, it does not justify equitably tolling the applicable deadline for two hundred and seventy-one days. If Johnson had exercised any diligence as to his supposed June 10, 2009 filing, he would have long ago discovered that said motion was never received by the court. The fact that the court has no record of any letters from Johnson questioning the status of his habeas case demonstrates that Johnson either did not previously mail a petition to the court, or that he did not exercise the required diligence to justify equitable tolling. Either way, the result is the same: Johnson is not entitled to have his deadline equitably tolled the length of time necessary for the court to accept his filing as timely. Because this court finds that Johnson is not entitled to equitable tolling, and that the "prison mail box rule" is inapplicable when the court never receives the mailing, the court is obliged to dismiss Johnson's motion as untimely.

Under the recently amended Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court is to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Id.* As the court is now entering a final order adverse to Johnson, the court will additionally rule on the issue of a certificate of appealability.

Before a 2255 petitioner may take an appeal to the Seventh Circuit, the district court must consider whether to grant the petitioner a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253(c). Fed. R. App. P. 22(b). The COA may issue only if the applicant makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). If the district court issues a COA, it must indicate which specific issue or issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3). The required showing for a COA also depends upon the basis for the court's decision on the petitioner's claims. Where a district court rejected the petitioner's constitutional claims on the merits, the petitioner must show that reasonable jurists would find the court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, where a court dismissed a petitioner's constitutional claim on procedural grounds, the determination of whether a COA should issue has two components. *Id.* at 484-85. First, the petitioner must show that reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. Next, the petitioner must show that reasonable jurists would find it

-9-

debatable whether the petition states a valid claim for denial of a constitutional right. *Id.*

In the instant case, the court is dismissing Johnson's claims on procedural grounds, namely, that the motion was untimely. As to the first component, it is clear that reasonable jurists would find this court's ruling on the timeliness issue to be debatable. While this court thinks that the instant situation (a filing allegedly being lost in the mail) should trigger a equitable tolling analysis, and not a "prison mail box rule" analysis, clearly reasonable minds would disagree with that assessment – as evidenced by the Ninth and Eleventh Circuits' above cited rules to the contrary.

Were the Seventh Circuit to adopt either this court's position (a filing never received is eligible for equitable tolling, but not the "prison mail box rule") or the Ninth Circuit's position (a filing never received is eligible for the "prison mail box rule" if petitioner diligently followed up), then clearly this court's ruling as to timeliness would be upheld. However, if the Seventh Circuit were to adopt the Eleventh Circuit's position, then this court's ruling as to timeliness would be overturned.

Under the Eleventh Circuit rule, the prisoner still must show that he actually did submit his petition to prison authorities to be mailed within the applicable time period. Johnson claims he mailed his petition on June 10, 2009; the only support he proffers for this contention is his own affidavit. This is insufficient to prove he timely mailed (thus "filed") his petition; however, under the Eleventh Circuit's rule, it is sufficient to shift the burden to the government. *See Culliver*, 471 F.3d at 1199

-10-

("*Houston* and Fed. R. App. P. 4(c) . . . imply that the burden of proof should be placed upon the state if [petitioner] has satisfied the requirement of Fed. R. App. P. 4(c)(1)"[6]) (citing *Houston*, 487 U.S. at 275-76 (prisons "have the well-developed procedures for recording the date and time at which they receive papers for mailing and . . . can readily dispute a prisoner's assertions that he delivered a paper on a different date . . . the prison will be the only party with access to at some of the evidence needed to resolve such questions.")). The only way for the government to meet this shifted burden, and show untimeliness, is by resorting to the prison mail log. However, through a phone call placed to USP Leavenworth, the facility in which Johnson has been housed at all applicable times, the court has learned that prison officials at the facility only log incoming legal mail, not outgoing legal mail. As a result, the government would be unable to prove, under the Eleventh Circuit's rule, that the filing was untimely.[7] Because it is possible that the Seventh Circuit could adopt the Eleventh Circuit's rule, and because doing so would mean Johnson's

---

[6] Fed. R. App. P. 4(c)(1) states that "timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of the deposit and state that the first class postage has been prepaid."

On page 14 of his motion, Johnson signed a declaration in compliance with 28 U.S.C. § 1746 declaring that he put his motion in the prison mail system on June 10, 2009.

[7] Thus, under the Eleventh Circuit rule, any prisoner at USP Leavenworth (as well as any other facility with a similar policy) could gain the benefit of the "prison mail box rule," regardless of the untimeliness of their filing, simply by submitting an affidavit stating the document was timely turned over to prison officials for mailing.

motion was timely filed, this court must find that reasonable jurists could debate the correctness of this court's ruling as to timeliness.

Though this court's procedural ruling meets the first prong for the granting of a COA, it does not meet the second prong. Reasonable jurists may find the timeliness issue debatable; however, there is no debate as to the fact that Johnson does not state a valid claim for the denial of a constitutional right.

Johnson bases his § 2255 motion on two separate grounds. The first ground is that he suffered from ineffective assistance of counsel, and resultingly pled guilty to a "void" indictment. The second ground is that the plea agreement is void.

Johnson sets out two bases for his first ground. The first is that the term "aiding and abetting" was not defined in the indictment. The second is that "the element of use and discharging [sic] a firearm was not alleged or defined in the indictment." (2255 Mot. at 5).

The fact that "aiding and abetting" is not defined in the indictment does not render the indictment void. If "aiding and abetting" were relevant to Johnson's count of conviction, he could arguably argue that he unknowingly entered a guilty plea since he did not understand that term;[8] however, he could not argue that the indictment itself was insufficient because he did not understand the term. However, the facts that Johnson agreed that the government could prove belie that Johnson

---

[8] Such argument would of course be summarily rejected, as the court took great pains during the plea colloquy to ensure that Johnson fully understood the count to which he was pleading, and to ensure that there was ample factual support for said plea.

-12-

Case 2:10-cv-00341-JPS   Filed 06/17/10   Page 12 of 15   Document 2

did not "aid and abet" but rather directly acted in committing an offense against the United States. Additionally, if "aiding and abetting" were relevant, it would not matter if Johnson did not fully understand the meaning of that term, all that would matter would be whether the facts to which Johnson agreed supported that element; Johnson does not argue that they failed to do so. Similarly, it is irrelevant that "use and discharge of a firearm" is not defined in the indictment.[9] Johnson agreed in his plea agreement that the government could prove facts that clearly demonstrate that Johnson was guilty of Discharging a Firearm in Furtherance of a Drug Trafficking Crime. It is irrelevant whether Johnson possessed the legal understanding to know whether the facts did indeed support the charge; he knew he was pleading to the facts and understood that the court would determine whether the facts supported the charge. The court did so and accepted Johnson's plea, as he undoubtedly wanted the court to do.

In support of his claim that the plea agreement was void, Johnson alleges that the plea agreement contains a different offense than the indictment. Count One of the indictment states: "The offense involved 5 kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance." Johnson's plea agreement stated that in order to sustain the charge to which Johnson pled guilty, the government must prove in part "that the defendant committed the crime of Conspiracy to Distribute 5 Kilograms or More of Cocaine, as charged in Count One."

---

[9] Johnson also states that "use and discharge of a firearm" is not alleged in the indictment. This is patently false.

Johnson maintains that because the indictment refers to five kilograms of "a mixture and substance containing cocaine," and the plea agreement refers to five kilograms of "cocaine," the plea agreement is thus void. Simply put, Johnson is wrong. Even if there was a difference between the two, which there is not, clearly "five kilograms or more of cocaine" would fall into the category of "five kilograms or more of a mixture and substance containing cocaine," thus obviating any argument that the charge to which Johnson pled differed from the charge on which he was indicted. The slight differential in language has zero legal implication, and does not render the plea agreement void.

Because reasonable jurists could not debate the insufficiency of Johnson's claims, the court cannot issue Johnson a COA. This is unfortunate, as a ruling from the Seventh Circuit as to the applicability of the "prison mail box rule" to documents never received by the court would be greatly beneficial and could close what otherwise could be a gaping loophole in the Rule 4 timeliness screening process. Though the court cannot grant a COA, at minimum, this opinion will inform others as to the possible options for dealing with such situations; at best it will encourage the Seventh Circuit to enter a clear rule stating that the "prison mail box rule" is definitively inapplicable to documents never received by the court.

Accordingly,

**IT IS ORDERED** that Johnson's Motion to Vacate, Set Aside or Correct Sentence (Docket #1) be and the same is hereby **DISMISSED as untimely**;

-14-

**IT IS FURTHER ORDERED** that Johnson be and the same is hereby **DENIED** a Certificate of Appealability; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of June, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge